**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×

ALLISON TEPLEY,

                    *Plaintiff,*

      v.

GRO INTELLIGENCE, INC. and SARA MENKER,

                   *Defendants.*

------------------------------------------------------------------------×

                                           **23-CV-11314**

 

 

                                           **COMPLAINT**

                                   **JURY TRIAL DEMANDED**

      Plaintiff, Allison Tepley, by her attorneys, Young & Ma LLP, complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff Allison Tepley ("Plaintiff" or "Ms. Tepley") seeks damages and costs against Defendants Gro Intelligence, Inc. ("Gro" or the "Company") and Sara Menker ("Menker")(collectively, "Defendants") for discriminating and retaliating against her based on sex, age, and pregnancy; and perpetuating pervasive sex, age, and pregnancy stereotypes; in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.*; the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2.    Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative male or younger colleagues or non-pregnant female colleagues, which provide similar or the same work and have similar or the same credentials and experience as Plaintiff, and for retaliating against her for exercising her rights in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d) *et seq.*; and N.Y. Labor Law § 194 ("NYLL").

## JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII, ADEA, and EPA.

4.      Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about August 30, 2023.

5.      Plaintiff requested a right to sue from the EEOC on or about September 21, 2023.  The EEOC issued the right to sue on or about September 21, 2023, and Plaintiff received it sometime thereafter.

6.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and NYLL claims as they are so related to the Title VII, ADEA, and EPA claims that they form part of the same case or controversy.

7.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

8.      Plaintiff, at all times relevant hereto and until September 2021, was and is a resident of New York County in the State of New York, after which she was approved to continue work from Nashville, Tennessee.

9.      Upon information and belief, at all times relevant hereto, Defendant Gro Intelligence, Inc. was and is a U.S. corporation incorporated in Delaware and headquartered in New York City.

10.     Upon information and belief, Defendant Sara Menker is an individual residing in New York and works in New York for Gro.

## STATEMENT OF FACTS

11.     Gro Intelligence bills itself as an AI-powered insights company providing decision-making tools, solutions and analytics to the food, agriculture, and climate economies and their participants, and has raised a total of $117.6M in funding over 5 rounds.

12.     After graduating from Georgetown University and Harvard Business School, Ms. Tepley started her career at Boston Consulting Group and then moved to Google.

13.     Ms. Tepley has extensive experience in growing the profitability of startups.  She is an expert in technology marketing and operations for SMB and enterprise target markets and across subscription and ad-based business models.  As an executive in marketing, Ms. Tepley has advanced many tech companies in New York, including Growth Stacks Strategies, Axial, Yext, AddThis, and AOL Advertising.

14.     It was a complete steal for Gro to acquire Ms. Tepley at a $285,000 annual compensation as the Head of Marketing with a target bonus of $45,000 (earned for 2021 and 2022 but only 2021 was paid) and equity.

15.     During her time with Gro, Ms. Tepley generated the first inbound sales pipeline of 2.1M directly across 1,450+ leads in 2022 before year end and influencing 5M into the corporate pipeline.  Prior to her arrival at the Company, the pipeline was at under $500,000.  She increased qualified demo requests in Q3 alone from 5 to 70+ including Syngenta, Garda Capital, Cargill, McCormick, Jones Lang Lasalle, USDA, Anheuser-Busch, and Farm Credit Canada.  Ms. Tepley expanded visibility with corporate, NGO and sovereign nation buyers, producing 3 times the number of press mentions including expansion into global markets (Al Jazeera, new BBC contributors, etc.).  She completed a marketing program including demand generation, sales and product marketing, content creation and communications.

16.     Ms. Tepley's deliverables from 2021 and 2022 strategy was completed where 70 percent of initial meetings started to come from marketing and which was at 0 when she started.  She generated the first contact with 94% of Top 50 Accounts, identified 2,140 new contacts for engagement in Top 50 and 4,300 overall.  Ms. Tepley created the first materials and campaigns to promote Gro products, built and updated core bill of materials for all commercial Gro products, started the first biweekly calendar of promotion of Gro applications, datasets and analytics, built launch process including Alerts and Displays in Q3 2021, and completed with Sales defined personas across teams.

17.     Ms. Tepley created a core team and marketing infrastructure rebuilding the website with the outside company, running process after it was abandoned by the Chief Product Officer, hired all team members and expanded influence of 1 existing hire to 6 people, created new functions communications and social media, demand generation, product marketing and content.  She ran projects outside of marketing because of lack of staff building revenue operations (reporting and contact generation) including owning core sales tools because it was needed for revenue and not built by sales.  She had to improve the number of meetings generated by sales, even though team members did not report to Marketing, since the Chief of Staff Philip Tuinenburg ("Tuinenburg") was not doing it after 10 months.  Ms. Tepley had 5 times the improvement in 3 months with attention.  Of the 1,400 names generated, sales bet with 200-300 but with junior sales people.  She brought in DE Shaw, a major PE client opportunity.

18.     After suffering the loss of her first baby, Ms. Tepley wanted to do something meaningful with her career and thought this Company would be the right platform.  When she had her devastating loss, Ms. Tepley took time off in 2019 to recover, making a website commemorating her experiences and also providing resources for other parents suffering loss.  In 2020, she had her

second daughter after several rounds of IVF.  Ms. Tepley trusted Gro because her friend Jennifer Brooks was a CMO at GLG at the time and vouched for Defendant Menker as a woman of color CEO with the right mission.  Although Ms. Tepley's profile warranted being a CMO at the time of hire, Menker wanted her to first be head of marketing but had no strategic plan, which Ms. Tepley built out herself.  There was a slightly longer onboarding process due to a Series B raise of $85M, which was successful.

19.     In January 25, 2021, although Ms. Tepley joined as the most senior in marketing, she still reported to Chief Revenue Officer Lori Arndt ("Arndt").  She agreed to first complete junior projects such as core functions and rebuilding the brand and website.  Defendant Menker immediately pushed for Ms. Tepley to get to $7M in budget and build a pipeline for sales although the first assignments were junior, tying up her time.  The next month, Ms. Tepley witnessed Selvi Chennai ("Chennai"), a woman of color over 40, pushed out as the SVP of Engineering.  The method of separation was also highly disrespectful to another minority woman, claiming she stole data, which was simply the Company asking her to use her personal computer until they got her a computer.  Chennai was replaced by a White male CTO, James Cariello.

20.     During Spring of 2021, Ms. Tepley had 3 lost embryos in transfer during IVF, which her prior boss Arndt will attest did not reflect in her performance at all but only took a toll psychologically.

21.     In June 2021, Chief Product Officer Arnaud Sahuguet ("Sahuguet") asked for ownership of relaunching the website, which is normally a marketing function.  Subsequently, he stopped coming to meetings and the project fell behind, so Ms. Tepley had to get it finished and it was successful in December 2022.  It would appear men were allowed to dominate and interfere with executive women in the company without the CEO or HR saying anything, which she found

surprising for a company launched by two minority women co-founders.  That summer, Ms. Tepley received a very positive review from Arndt with language such as, "***What I love the most about you is that you get shit done. You are strategic, you build a plan, you come with ideas, and then you do them***." Ms. Tepley also received other great feedback on her team building and other skills.

22.     Until September 2021, Ms. Tepley worked and lived in New York City and then was approved to continue work from Nashville, TN.

23.     In October 2021, Ms. Tepley shared with her boss Arndt that she was pregnant; Arndt knew she was doing IVF and was supportive.  Ms. Tepley had 5 transfers and infusions.  While the CRO asked Ms. Tepley whether she needed accommodations during treatments, Defendant Menker was unaware of the pregnancy, making it difficult to accept any obvious accommodations.  Both women knew it was best that Menker does not know, given her then suspected and later proven discrimination.  Arndt was terminated shortly thereafter for lack of sales even though the CEO had not given her product support.  Arndt is a woman over 40 who was replaced by two men, Tuinenburg  and Joel Cherkis ("Cherkis").  Marketing was consistently generating meetings for Sales but Tuinenburg and Cherkis were not converting them to revenue and sent junior people to meetings.  Menker insisted that only her pipeline sales were given full attention, even though they rarely sold, limiting the ability to build a repeatable and scalable business with the senior sellers.

24.     In November 2021, Ms. Tepley asked both the CEO Defendant Menker and the COO for the time of planning for strategy and budget to share strategic plan to be implemented after website launch.  The budget for 2021 had been decided by the CEO prior to Ms. Tepley's joining and did not approach $7M.

25.     By January 29, 2022, Ms. Tepley let the CEO Defendant Menker know of her pregnancy. A short while later on February 9, 2022, Ms. Tepley asked for her review and suddenly Menker said, "***Whoa. Don't get ahead of yourself. I give you real-time feedback***." This was incredibly humiliating and undermining for a female/mother executive that had been promised a CMO promotion.  Therefore, there was no review or metrics discussed to become CMO, which was discussed at hire but suddenly off the table after notice of pregnancy.  Menker also immediately stopped weekly meetings. By March of 2022, meetings were very rare but Menker assured Ms. Tepley of good standing and that the team should focus on Russia-Ukraine issues.  Menker also started to include Tuinenburg, the Chief of Staff and sales, in marketing meetings as well as the COO, but would not include Ms. Tepley.

26.     Given these circumstances, Ms. Tepley worked hard all the way to the hospital with no FMLA or NYS Paid Family Leave or any accommodation until her delivery.  No one on senior leadership seemed to take significant leave, except men, for whom leave was acceptable.

27.     In Spring of 2022, Michael Simonetti, a male SVP of Climate, took 3 weeks off when his wife had a second child, even though she takes all the night feedings and he sleeps in another room to get good sleep.  This is clearly not physically possible for an executive mother.

28.     In April 2022, shortly before Ms. Tepley's due date, she did fill out short term disability paperwork for leave after delivery to June 6, 2022.  On April 25, she was induced and was still messaging and working from the hospital.  Due to slight placenta complications, Ms. Tepley delivered on April 26.  Being sleep deprived and breastfeeding, she still checked in from April 30, 2022 through the summer.

29.     While Ms. Tepley was on a short leave after delivery, the CEO Defendant Menker presented to the Board of Directors that Product Marketing would move from marketing to

product.  The Chief Product Officer, Sahuguet, had no experience in marketing or product marketing.  Interestingly, the special committee of the Board created by Menker was already light with women (much less mothers of young children who would understand the completely discriminatory nature of these business changes while the lead woman in charge is on maternity).

30.     On July 25, when Ms. Tepley returned, product marketing had been approved to move to product and the "Board" (likely the special committee with no women) and Defendant Menker had approved it.   Simultaneously, Ms. Tepley had added goals outside of her team and responsibilities, including sales responsibilities.  Menker completely ended any one on ones with Ms. Tepley so it was impossible to align on strategy.  The COO and Chief of Staff were added to weekly meetings with CEO Menker.  Meanwhile, the Chief of Staff said, "things are a mess.  We can't wait to have you back."  This was said just to cut Ms. Tepley's leave short and the Company terminated her shortly thereafter anyway, as most of her responsibilities were stripped.

31.     Ms. Tepley was still full time breastfeeding upon her return.  She was up 2-3 times a night with the newborn and a young child under 5.  The newborn had to move to full time daycare to accommodate Ms. Tepley's work needs, which is of course triggering as she had lost another baby.  The toddler was having sleep regressions and she had horrible PTSD anytime the children would get sick.  When the newborn had RSV, Ms. Tepley would be at the hospital for 8 hours and yet taking calls.  As a 44 year old mother with very little time off, the distress combined with the professional minimizing was excruciating to her health.  Meanwhile, late in the summer of 2022, Dave Weinstein's wife had a third child and he took 3 weeks off without any work consequences.

32.     Ms. Tepley was ambushed with a performance review six (6) weeks after her return on September 14, 2022.  She had requested her first review by 19 months at Gro when she was told

to hold her horses in January, but now Defendant Menker had time to immediately review Ms. Tepley following her return from leave and where her job was significantly changed for the worse.

33.    Nevertheless, Ms. Tepley had surpassed her 2022 goals and targets were approved; she had a large pipeline in revenue, $2M in marketing and $5M overall, which was 0 when she started; 3 times the press mentions and feedback like, "You always create board slides with goals and then the numbers that you hit them," "You have done an amazing job building the team," "100% want you here," and "You get things done."

34.    Yet the conclusion was, "We are bringing in a CMO to complement your skill set in managing the day to day. Usually they are not the same person."  Obviously, this was the role Ms. Tepley had been working hard to get.  There was absolutely no explanation why she could not do the work, except discrimination after she had a baby.  Even the outside HR expert, Valerie Hughes ("Hugher"), was surprised, saying, "She buried the lead in talking about a new CMO.  All I have ever heard about you is that your performance is great, and Sara 100% wants you at Gro.  She will probably never bring this new CMO thing up again."

35.    The retaliation continued to worsen, asking Ms. Tepley to improve in shortening updates to Defendant Menker.   The request for shorter updates was entirely superficial, and was immediately resolved, so Menker was just trying to document to terminate.  The original request for comprehensive reviews was from her Chief of Staff, which was 20-30 line updates that was reduced to 7-8 lines.  Ms. Tepley was asked to lead a larger strategy but she had already sent the 4 strategy pillars to the CEO, which were always ignored in the past.  Again, none of these things were requested prior to Ms. Tepley's pregnancy.  When she asked Hughes whether she should have pushed back on the strategy documents as she gave them to Menker and she never wanted to

talk about them, Hughes said, "Look if you had pushed too hard on the strategy, you would not have made it this far.  All those people – the big picture people – are now gone."

36.     From August to October, things took a swift downturn for Ms. Tepley.  She was blamed for the level promotion of a team member although that was approved by the COO on her leave. Defendant Menker now said Ms. Tepley cannot designate the team member to product marketing as she decides all title changes.  Ms. Tepley was blamed for a presentation by Senior Analyst Will Osnato on the Ukraine and related blog post including China data.  However, this person does not report to Ms. Tepley and she was not consulted in presentation.  Jim Henegan ("Henegan") and Steve Mathews ("Mathews"), who supervise the senior analyst, were not blamed at all.  Ms. Tepley was blamed for the Chief of Staff's decision to limit promotion to one event (Kansas City Fed) but previously he had asked to not do a promotion email dedicated to the event.  She was blamed for updating the team on top level strategy.  Suddenly, after 10 months of the website being up, Menker complained about homepage message effectiveness, when it was written and approved by her personally and any changes were made by the Chief of Staff during Ms. Tepley's leave.

37.     By October 3, 2022, Ms. Tepley raised to Hughes that Defendant Menker was attributing errors from other teams to Ms. Tepley after she had a baby.  Hughes's response was, "It seems like there is a lot going on. I'll keep an eye out."  There was no mention of an investigation or even anti-retaliation instruction.

38.     Then Ms. Tepley was fired November 4, with very little explanation, saying she had a "tough review in September."  However, Defendant Menker had given mostly positive feedback with superficial improvement requests.  Menker also raised at termination other performance issues not previously mentioned.  She told Ms. Tepley, "thank you for everything you have built,"

but told others, "this termination has been coming for months," which if true, is still after Menker knew of the pregnancy and leave.

39.     The analyst and product leaders had multiple public customer failures and inaccurate data (Bayer application Farmer Profitability and Crop Budgets and the African Food Security Tracker) but were not terminated because the people responsible were all men: Henegan, Mathews, Tuinenburg, and Sahuguet.  Defendant Menker also took a hire, Michelle Montgomery, meant for Ms. Tepley and gave her to Sahuguet.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION**
**Sex and Pregnancy Discrimination and Hostile Work Environment**
**in Violation of Title VII**
**(Against Defendant Gro)**

40.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

41.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of Defendant Gro.

42.     Gro was Plaintiff's "employer" within the meaning of Title VII.

43.     Plaintiff was a female "employee" of Gro and is a member of protected classes within the meaning of Title VII.

44.     At all relevant times, the Company was aware of Plaintiff's sex and pregnancy.

45.     By the conduct alleged in this Complaint, Gro discriminated against Plaintiff with respect to the compensation, terms, conditions and privileges of her employment because of her sex and pregnancy.

46.     Plaintiff was subjected to a pervasive hostile work environment by the Defendant's conduct.

47.     The Company engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's sex and pregnancy in the manner described in the Statement of Facts.

48.      Plaintiff suffered adverse employment actions and continuing damage by the Defendant due to her sex and pregnancy and the hostile work environment that Plaintiff suffered at Gro because of her sex and pregnancy.

49.     As a direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continues to suffer the loss of income and damage to reputation.  Plaintiff has also suffered and/or will suffer future pecuniary losses, attorney's fees and costs, emotional and physical pain and suffering, inconvenience and other non-pecuniary losses.

50.     As a further direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other things, impairment and damage to her good name and reputation, emotional distress, physical injury, mental anguish and lasting embarrassment and humiliation.

51.     Plaintiff is entitled to recover, inter alia, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Gro under Title VII.

**SECOND CAUSE OF ACTION**
**Age Discrimination in Violation of**
**the Age Discrimination in Employment Act**
**(Against Defendant Gro)**

52.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

53.     At all relevant times, Plaintiff was an "employee" under the ADEA, 29 U.S.C. § 621, *et seq*.

54.     At all relevant times, Defendant Gro was an "employer" under the ADEA, 29 U.S.C. § 630(b).

55.     Based on the actions detailed above in the Statement of Facts, Defendant Gro has unlawfully discriminated against Plaintiff on the basis of age in violation of the ADEA.

56.     By reason of the foregoing, Plaintiff suffered damages, including emotional pain and mental anguish, in an amount to be determined at trial.

57.     Upon information and belief, Defendant's conduct was willful, entitling Plaintiff to liquidated damages pursuant to 29 U.S.C. § 626(b).

**THIRD CAUSE OF ACTION**
**Sex, Age, and Familial Status Discrimination and Hostile Work Environment**
**in Violation of NYSHRL**
**(Against All Defendants)**

58.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

59.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

60.     At all relevant times, the Company was Plaintiff's "employer" within the meaning of the NYSHRL.

61.     At all relevant times, Plaintiff was an "employee" of Gro within the meaning of the NYSHRL.

62.     At all times, Defendants were aware of Plaintiff's sex, age, and familial status.

63.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL because of Plaintiff's sex, age, and familial status in the manner described in the Statement of Facts.

64.     Plaintiff is severely limited in her career by Defendants' unlawful conduct due to her sex, age, and familial status.

65.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of age and sex as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

66.     Defendants are also individually and jointly liable for the unlawful conduct herein, including, without limitation, as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL.

67.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

68.     Plaintiff's damages include, inter alia, financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

69.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to, back pay, front pay, compensatory and punitive damages, and costs and attorney's fees from Defendants under the NYSHRL.

**FOURTH CAUSE OF ACTION**
**Sex, Age, and Pregnancy Discrimination and Hostile Work Environment**
**in Violation of NYCHRL**
**(Against All Defendants)**

70.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

71.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

72.     At all relevant times, Defendants were an employer and person within the meaning of the NYCHRL.

73.     At all relevant times, Plaintiff was an employee and person within the meaning of the NYCHRL.

74.     At all times, Defendants were aware of Plaintiff's sex, age, and pregnancy.

75.     Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's sex, age, and pregnancy in the manner described in the Statement of Facts.

76.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

77.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination and a hostile work environment.

78.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL.

79.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost wages, lost back pay, lost benefits, lost bonuses, interest on the foregoing, and attorney's fees and costs.

80.     As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional and physical pain and suffering, and lasting embarrassment and humiliation.

81.     Plaintiff is entitled to recover monetary damages and other damages and relief, including compensatory and punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

**FIFTH CAUSE OF ACTION**
**Pay Discrimination**
**in Violation of the EPA**
**(Against All Defendants)**

82.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

83.     At all times relevant herein, Plaintiff was and is a "Person" as defined under 29 U.S.C. § 203(a).

84.     At all times relevant herein, Plaintiff was and is an "Employee" as defined under 29 U.S.C. § 203(e)(1).

85.     At all times relevant herein, Defendant Gro was and is an "Employer" as defined under 29 U.S.C. § 203(d).

86.     At all times relevant herein, Defendant Menker was and is an "Employer" as defined under 29 U.S.C. § 203(d).  Menker had operational control over Plaintiff's employment at Gro, controlled significant functions of the business with respect to Plaintiff's employment, and determined salaries, hiring decisions, performance evaluations and other terms and conditions relevant to Plaintiff and her peers.

87.    Defendants discriminated against Plaintiff within the meaning of the Equal Pay Act by providing her with lower pay and other less favorable terms and conditions of employment than similarly situated male colleagues on the basis of her sex even though Plaintiff performed equal and/or more work requiring equal and/or more skill, effort, and responsibility as her similarly situated male counterparts.

88.    Plaintiff and similarly situated male colleagues all performed equal job duties and functions.

89.    Plaintiff and similarly situated male colleagues all performed equal work that required equal skill, effort and responsibility, and that was performed under similar working conditions.

90.    Defendants discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denial of raises and bonuses and other compensation, discriminatory denial of promotions and/or titles, and other forms of discrimination in compensation in violation of the Equal Pay Act.

91.    The differential in pay between Plaintiff and her male colleagues was not due to seniority, merit, quantity or quality of production, or a factor other than sex.  Rather, the differential in pay was due to Plaintiff's sex.

92.    Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender in violation of the Equal Pay Act.

93.    Defendants' actions were not done in good faith nor did they have any reasonable grounds for believing that their acts or omissions were not a violation of the Fair Labor Standards Act.

94.    As a result, Plaintiff is entitled to liquidated damages.

95.    Defendants' foregoing conduct also constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a).

96.     As a result, Plaintiff has suffered and continues to suffer damages and harm, including but not limited to lost wages and lost earning capacity and loss of confidence.

97.     Plaintiff is entitled to recover monetary damages and other damages and relief under 29 U.S.C. § 206(d) *et seq.* and 29 U.S.C. §255(a) *et seq.*

**SIXTH CAUSE OF ACTION**
**Violation of the New York State Labor Law § 194**
**(Against All Defendants)**

98.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

99.     Plaintiff is an "employee" of Gro as defined under N.Y. Lab. Law § 190(2).

100.    Defendants are "employers" as defined under N.Y. Lab. Law § 190(3).

101.    Defendants knowingly, willfully and intentionally paid Plaintiff less than her co-workers performing substantially similar work due to Plaintiff's sex, age and pregnancy status.

102.    Defendants' disparate treatment of Plaintiff with respect to her compensation is not based on any legally-recognized differential or bona fide factor, but rather is based on Plaintiff's status in protected classes.

103.    The facts supporting unequal pay and terms and conditions of employment are further outlined in the Statement of Facts.

104.    As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three hundred percent of the total amount of the wages due for Defendants' willful violation.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of Title VII**
**(Against Defendant Gro)**
**and the NYSHRL and NYCHRL**
**(Against All Defendants)**

105.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

106.    Defendant Gro violated Title VII, and all Defendants violated the NYSHRL and NYCHRL, because they knowingly retaliated against Plaintiff for objecting to the discrimination at Gro, as alleged in the Statement of Facts above.

107.    Defendants were aware that Plaintiff engaged in the protected activities alleged above.

108.    Because of her protected activities, Defendants took retaliatory adverse employment actions against Plaintiff as alleged in the Statement of Facts above.

109.    The unlawful retaliation against Plaintiff by Defendants was done with malice and reckless indifference to Plaintiff's protected rights.

110.    As a direct and proximate result of the unlawful retaliation by Defendants, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.


**JURY DEMAND**

111.    Plaintiff demands a trial by jury.

    **WHEREFORE**, Plaintiff demands a judgment against Defendants as follows:

A.      Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated:  (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; (ii) the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.*; (iii) the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; (iv) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; (v) the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.*; (vi) N.Y. Labor Law § 194; and (vii) that Defendants' foregoing acts of discrimination, harassment, and retaliation against Plaintiff were intentional and willful.

B.      Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C.      Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest;

D.      Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

E.      Award the Plaintiff punitive damages;

F.      Award the Plaintiff liquidated damages;

G.      Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the court deems appropriate to be determined at trial.

Dated: New York, New York
        December 30, 2023

Respectfully submitted,

By: _____
        Tiffany Ma, Esq.
        Young & Ma LLP
        445 Park Avenue, 9th Floor
        New York, NY 10022
        T: 646-379-7703
        F: 866-839-4306
        tma@youngandma.com